No. 15-1214

United States Court of Appeals
for the First Circuit

CLAYTON SCHWANN, individually and on behalf of a class of all others similarly
situated; THOMAS LEDUC, individually and on behalf of a class of all others similarly
situated; RAMON HELEODORO, individually and on behalf of a class of all others
similarly situated; JAMES E. DUGGAN, individually and on behalf of a class of all others
similarly situated; ERIC VITALE, individually and on behalf of a class of all others
similarly situated; MUCHIRAHONDO PHINNIAS, individually and on behalf of a class
of all others similarly situated; TEMISTOCLES SANTOS, individually and on behalf of a
class of all others similarly situated; ROBERT SANGSTER, individually and on behalf of
a class of all others similarly situated; JEFF BAYLIES; LAWRENCE ADAMS,
*Plaintiffs-Appellants*,

MARVIN SANTIAGO, individually and on behalf of a class of all others similarly
situated; MANUEL MONTROND, individually and on behalf of a class of all others
similarly; SERRULO FERNANDEZ DEJESUS, individually and on behalf of a class of
all others similarly situated; WAN PYO CONG, individually and on behalf of a class of all
others similarly situated; LEON HECTOR,

*v.*

FEDEX GROUND PACKAGE SYSTEM, INC., D/B/A FEDEX HOME DELIVERY,
*Defendant-Appellee.*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**SUPPLEMENTAL BRIEF OF AMICUS CURIAE
THE MASSACHUSETTS ATTORNEY GENERAL
IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL**

MAURA HEALEY
*Attorney General of Massachusetts*

Peter Sacks (1st Cir. No. 25564)
*State Solicitor*
Elizabeth N. Dewar (1st Cir. No. 1149723)
*Assistant State Solicitor*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2064
peter.sacks@state.ma.us

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ...............................................................................1

    I.    Wage Act Compliance Would Have No Significant Impact on FedEx's Prices, Routes or Services......................................................2

           A.    The Wage Act Prohibits Employers from Shifting Their Business Expenses to Employees Through Wage Deductions and Through Failing to Reimburse for Employees' Out-of-Pocket Expenditures that Primarily Benefit the Employer. ..................................................2

           B.    Because FedEx Says It Already Compensates Plaintiffs "Well in Excess of Market Rates Even When Their Settlement Deductions and Out-of-Pocket Expenses Payments Are Taken into Account," FedEx Cannot Show that Compliance with the Wage Act's Limits on Deductions and Unreimbursed Expenses Would Have Any "Significant Impact" on FedEx's Prices, Routes, or Services. ..................................................5

    II.    FedEx Has Not Shown that the Other Laws § 148B Triggers, in M.G.L. Chapters 149 and 151, Would Have Any "Significant Impact" on FedEx's Prices, Routes, or Services................................10

    III.    Section 148B Does Not Prevent FedEx From Contracting Out Its First- and Last-Mile Delivery Functions.......................................13

CONCLUSION ...............................................................................14

CERTIFICATES OF COMPLIANCE AND SERVICE .........................................16

# TABLE OF AUTHORITIES

**Cases**

*Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*,
  2015 WL 5515343 (11th Cir. 2015) .......................................... 11

*Arriaga v. Florida Pacific Farms, LLC*,
  305 F.3d 1228, 1236 (11th Cir. 2002) ......................................... 4

*Awuah v. Coverall North America, Inc.*,
  460 Mass. 484, 952 N.E.2d 890 (2011) ................................... 3-4

*Camara v. Attorney General*,
   458 Mass. 756, 941 N.E.2d 1118 (2011) ............................. 2, 3

*Debnam v. FedEx Home Delivery*,
  2013 WL 5434142 (D. Mass. Sept. 27, 2013) .......................... 14

*Debnam v. FedEx Home Delivery*,
  766 F.3d 93 (1st Cir. 2014) ...................................................... 14

*DiFiore v. American Airlines, Inc.*,
  646 F.3d 81 (1st Cir. 2011) ...................................................... 11

*Dilts v. Penske Logistics, LLC*,
  769 F.3d 637 (9th Cir. 2014) .................................................... 12

*Filo Foods, LLC v. City of SeaTac*,
  183 Wash. 2d 770, 357 P.3d 1040 (2015) ................................ 11

*Goodrow v. Lane Bryant, Inc.*,
  432 Mass. 165, 732 N.E.2d 289 (2000) ...................................... 4

*Massachusetts Delivery Ass'n v. Coakley*,
  769 F.3d 11 (1st Cir. 2014) ...................................................... 10

*Mullally v. Waste Mgmt. of Mass., Inc.*,
  452 Mass. 526, 895 N.E.2d 1277 (2008) .................................... 4

*Rowe v. N.H. Motor Transport Ass'n*,
  522 U.S. 364 (2008)..................................................................11

*Ramos-Barrientos v. Bland*,
  661 F.3d 587, 595-96 (11th Cir. 2011)...........................................4

*Sebago v. Boston Cab Dispatch, Inc.*,
  471 Mass. 321, 28 N.E.3d 1139 (2015)................................6, 12

*Somers v. Converged Access, Inc.*,
  454 Mass. 582, 911 N.E.2d 739 (2009).......................................5

**Statutes and Regulations**

29 U.S.C. §§ 201-219 (Fair Labor Standards Act) ...........................3-4

49 U.S.C. § 14501(c)(1) (FAAAA of 1994).........................................1

M.G.L. c. 62B ...............................................................................12

M.G.L. c. 62B, § 2 ..........................................................................2

M.G.L. c. 149 ...................................................................1, 10, 13

M.G.L. c. 149, § 1 .........................................................................13

M.G.L. c. 149, § 47 .......................................................................12

M.G.L. c. 149, §§ 48-51................................................................12-13

M.G.L. c. 149, § 52 .......................................................................13

M.G.L. c. 149, § 52C .....................................................................13

M.G.L. c. 149, § 100 .....................................................................12

M.G.L. c. 149, § 105D....................................................................11

iii

M.G.L. c. 149, § 148 .......................................................................*passim*

M.G.L. c. 149, § 148B ....................................................................*passim*

M.G.L. c. 149, § 150 .......................................................................*passim*

M.G.L. c. 149, § 150C ................................................................................2

M.G.L. c. 151 ........................................................................... 1, 10, 13

M.G.L. c. 151, § 1 ................................................................................ 12

M.G.L. c. 151, § 1A(8) .......................................................................... 11

M.G.L. c. 151, § 15 ............................................................................... 13

M.G.L. c. 152 ................................................................................ 6, 12

29 C.F.R. § 531.3(d) .............................................................................. 4

29 C.F.R. § 531.32(c) ............................................................................ 4

29 C.F.R. § 531.35 ............................................................................ 3-4

455 C.M.R. 2.01 ................................................................................ 12

## Miscellaneous Sources

"Can I schedule a pickup for Saturday?" at
    http://www.fedex.com/us/customer
    support/shipping/pickup/
     (last visited 11/16/15) ............................................................ 12

"Does FedEx offer weekend delivery?" at
    http://www.fedex.com/us/customersupport/shipping/
    (last visited 11/16/15) ............................................................. 12

## INTRODUCTION

As the Court requested at oral argument, the Attorney General submits this supplemental *amicus* brief to describe the practical effect of Massachusetts' Employee Misclassification Law, M.G.L. c. 149, § 148B, in the context of this case involving FedEx.  The Attorney General first discusses the effect on FedEx of the Wage Act, *id*. §§ 148, 150, as it is the Wage Act insofar as triggered by § 148B that Plaintiffs seek to enforce and that FedEx claims causes § 148B to be preempted by the FAAAA, 49 U.S.C. § 14501(c)(1).  The Wage Act's practical effect on FedEx, according to FedEx's own evidence and argument, is limited to *how* FedEx pays its drivers for their labor, not *how much* it pays them.

The Attorney General next discusses the limited effect on FedEx of certain other provisions of M.G.L. chapters 149 and 151 (the only laws § 148B triggers).  Any effect is difficult to discern, given FedEx's failure (despite ample opportunity) to develop any record on those issues, and difficult to infer as a matter of logic.

Finally, the Attorney General explains why neither § 148B nor any of the laws it triggers "bans" FedEx from using independent contractors to perform its first- and last-mile delivery services.  Indeed, the record in this and other cases shows that FedEx now uses such contractors.  The conclusion on this record must be that neither § 148B, nor any other law insofar as triggered by § 148B, has any "significant impact" on FedEx's prices, routes, or services so as to be preempted.

I.    **Wage Act Compliance Would Have No Significant Impact on FedEx's Prices, Routes or Services.**

    A.    **The Wage Act Prohibits Employers from Shifting Their Business Expenses to Employees Through Wage Deductions and Through Failing to Reimburse for Employees' Out-of-Pocket Expenditures that Primarily Benefit the Employer.**

"Section 148 of the Wage Act requires prompt and full payment of wages due." *Camara v. Attorney General*, 458 Mass. 756, 759, 941 N.E.2d 1118, 1121 (2011). It also specifies that no employer "shall by a special contract with an employee or by any other means exempt himself from this section or from [§ 150]." M.G.L. c. 149, § 148, ¶ 5. The "special contract" prohibition bars any agreement purporting to authorize otherwise-unlawful deductions from earned wages, even if "voluntary and assented to[.]" *Camara*, 458 Mass. at 760-61, 941 N.E.2d at 1121-22.

In addition, the Wage Act significantly limits an employer's available defenses. M.G.L. c. 149, § 150, ¶ 1.[1] One such defense is that the employee has made a "valid assignment" of the wages due, but the Wage Act expressly prohibits employees from assigning any portion of their future wages over to their employer, or to another person on the employer's behalf, or for the purpose of relieving the employer's wage payment obligations. *Id*. There is also a "valid set-off" defense,

---

[1]    Absent a specified statutory defense, the only permissible deductions from earned wages are those required or authorized by other law. *E.g.*, G.L. c. 62B, § 2 (tax withholding); G.L. c. 149, § 150C (health insurance contributions).

*id.*, but it has been construed narrowly so as to further "the legislative purpose of protecting employees' interests." *Camara*, 458 Mass. at 763, 941 N.E.2d at 1123-24. A "valid set-off" is limited to "a clear and established debt owed to the employer by the employee," and none of the examples given by the SJC in *Camara* applies here. *See id*. at 763 & n.13, 941 N.E.2d at 1124 & n.13.

Importantly, a "valid set-off" does *not* include a deduction from an employee's wages to reimburse the employer for paying for liability insurance, where such insurance covers "future damages that may never come to pass and, even if they do, may not be the responsibility of the employee." *Awuah v. Coverall North America, Inc.*, 460 Mass. 484, 496-97, 952 N.E.2d 890, 899-900 (2011). Moreover, "[a]n agreement between an employer and an employee that the *employee* will obtain insurance for the benefit of the employer also violates the Wage Act because it is a 'special contract' that has the effect of exempting the employer from the obligations to pay earned wages in full." *Id*. at 497 n.22, 952 N.E.2d at 900 n.22 (emphasis added). The SJC based this conclusion in part on federal Fair Labor Standards Act (FLSA, 29 U.S.C. §§ 201-219) regulations, under which, as the SJC described, "'wages' cannot be considered to have been paid ... unless they are paid finally and unconditionally or 'free and clear,' [and not] 'kick[ed]-back' ... to another person for the employer's benefit[.]" *Id*. (quoting 29

C.F.R. § 531.35 (2010)).[2] "An employer's insurance costs, when borne by an employee, reduce wages just as effectively as if the employer had obtained the policy and deducted funds from the wages." *Id*. at 497 n.22, 952 N.E.2d at 900 n.22.

Under the FLSA, no wage deduction (or expense incurred by the employee and not reimbursed) is permitted when its purpose is "primarily for the benefit or convenience of the employer." 29 C.F.R. § 531.3(d) (wage deductions may not include costs of furnishing "tools of the trade and other materials and services incidental to carrying on the employer's business"); *id*. §§ 531.32(c), 531.35; *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1235-37 (11th Cir. 2002); *see Ramos-Barrientos v. Bland*, 661 F.3d 587, 595-96 (11th Cir. 2011).

Accordingly, consistent with U.S. Department of Labor FLSA interpretations, the Attorney General views the Wage Act as prohibiting any agreement by which employees become obligated to pay, either through wage deductions or by payment to third parties without full and timely reimbursement,

---

[2]  The SJC looks to the FLSA and its regulations for guidance in interpreting the Commonwealth's analogous wage laws. *Awuah*, 460 Mass. at 497-98 & n.22, 952 N.E.2d at 900 & n.22; *Mullally v. Waste Mgmt. of Mass., Inc.*, 452 Mass. 526, 531, 895 N.E.2d 1277, 1281 (2008); *Goodrow v. Lane Bryant, Inc.*, 432 Mass. 165, 170-72, 732 N.E.2d 289, 293-95 (2000).

business expenses for goods and services that primarily benefit their employer.[3]

> **B. Because FedEx Says It Already Compensates Plaintiffs "Well in Excess of Market Rates Even When Their Settlement Deductions and Out-of-Pocket Expenses Payments Are Taken into Account," FedEx Cannot Show that Compliance with the Wage Act's Limits on Deductions and Unreimbursed Expenses Would Have Any "Significant Impact" on FedEx's Prices, Routes, or Services.**

Here, the Attorney General views the Wage Act as requiring FedEx to bear two categories of expenses that FedEx imposed in the first instance on its drivers under its complex one-year, renewable Operating Agreement ("OA") (R. 246-367). The two categories are (1) FedEx's deductions from what it paid drivers, and

---

[3] In keeping with this Court's inquiry into the effects of § 148B and the laws it triggers, this necessarily brief overview focuses on what payments and deductions the Wage Act requires and prohibits as a matter of prospective compliance, rather than what damages Plaintiffs might recover if FedEx were found to have violated the Wage Act. Although the two issues substantially overlap, there are also significant differences, as shown by the questions the District Court certified to the SJC, SA 95-105, and the parties' SJC briefs on those questions. *See* FedEx Request for Judicial Notice ("RJN") Ex. 1, 2. In particular, FedEx argued that any damages it owed should be offset by "supplemental forms of compensation the Plaintiffs received in their settlements that were designed to defray their expenses." FedEx SJC Br. (RJN Ex. 2) at 48 & n.30; *see id.* at 10-12 & n.4, 16. Plaintiffs disagreed, citing *Somers v. Converged Access, Inc.*, 454 Mass. 582, 591-93, 911 N.E.2d 739, 749-50 (2009). *See* Pl. SJC Br. (RJN Ex. 1) at 26-27. This Court need not resolve those issues, which would be for the District Court in the first instance, with the SJC's assistance if necessary. Prospectively, though, FedEx or any employer could minimize or avoid such disputes by more clearly differentiating expense reimbursements from compensation for labor, which FedEx did not do. *E.g.*, R. 291 (providing for "Contractor and Van Availability Settlement" of "$45 for each business day that Contractor makes a *van or straight truck and a qualified driver available and provides services* under the Agreement") (emphasis added).

(2) vehicle-related costs that FedEx required drivers to pay out-of-pocket.  But FedEx has repeatedly claimed that "[e]ven after taking into account expenses that Plaintiffs bore, they made well above market rate."  FedEx Br. at 8; *see* FedEx SJC Br. (RJN Ex. 2) at 12 (FedEx is compensating Plaintiffs "well in excess of market rates even when their settlement deductions and out-of-pocket expenses payments are taken into account").  FedEx thus has not shown that having to adjust *how* it pays drivers in order to comply with the Wage Act—by ceasing improper deductions, and specifically reimbursing drivers for their out-of-pocket vehicle expenses that primarily benefit FedEx, without any apparent need to reduce its "well-above-market" compensation for drivers' actual labor—would have any "significant impact" on FedEx's net costs, let alone its prices, routes, or services.

**1. Deductions.**  FedEx deducted from drivers' weekly settlements the costs of various forms of insurance,[4] as well as a "business support package" through which FedEx provided drivers with "uniforms, package scanners, vehicle washes,

---

[4]   One required type of insurance was "work accident and[/or] workers compensation insurance."  SA 97; *see* R. 263.  FedEx would not be *required* to purchase workers compensation insurance for its drivers unless they met the definition of "employee" in the Worker's Compensation Act, M.G.L. c. 152, which is different from § 148B's definition.  *See* AG Amicus Br. at 6 n.1 (citing *Sebago v. Boston Cab Dispatch, Inc.*, 471 Mass. 321, 337-38 & nn.12-14, 28 N.E.3d 1139, 1153-54 & nn.12-14 (2015)).  It is a separate question, not presented by this appeal, whether Plaintiffs could recover Wage Act damages where FedEx *chose* to require the purchase of such insurance and then deducted the costs from what FedEx paid Plaintiffs.  SA 97-100, 104.

and federally mandated drug testing." SA 97 (District Court memo in support of certification of questions to SJC, citing OA). The Attorney General views all of these items as primarily benefiting FedEx, and thus the Wage Act would prohibit FedEx from deducting these costs from what it paid employee drivers as compensation for their labor. But, as shown *supra*, FedEx claimed to the SJC that Plaintiffs' gross compensation left room for these deductions while still netting Plaintiffs ample pay. RJN Ex. 2 at 12; *see id*. at 43 ("Plaintiffs' total compensation under the OA was designed to give them above-market pay even after any deductions were made by [FedEx] and expenses were paid.").

   **2. Out-of-Pocket Expenses.** The OA "required a driver to provide his own delivery vehicle and to 'bear all costs and expenses incidental to [the] operation'" of the vehicle. SA 96-97 (quoting OA). These included "all risks of depreciation, all maintenance (including cleaning and washing), fuel, oil, tires, repairs, [a wide range of] taxes ... licenses, vehicle registration renewal fees, base plates, and all highway, bridge and ferry tolls." SA 96 (quoting OA). To the extent that employee-drivers could establish that—as it appears—the vehicles are driven primarily to deliver FedEx's packages and thus primarily to benefit FedEx, the Wage Act would prohibit FedEx from requiring such drivers to pay the corresponding costs without full and timely reimbursement. (The Wage Act would *not*, however, require FedEx (1) to pay costs attributable to employee-drivers'

personal use, or non-FedEx business use, of the vehicles; (2) to buy or lease vehicles for employee-drivers, or (3) to garage employee-drivers' vehicles on its own premises rather than letting the drivers take them home.)

But FedEx has already told this Court that its "business model took into account Plaintiffs' costs of doing business and compensated Plaintiffs well above market rate in exchange for incurring those costs." FedEx Br. at 30-31; *see id*. at 8. FedEx said the same in the District Court. SA 72, 75.[5]

In short, FedEx says it is *already* paying its drivers for their vehicle expenses. All FedEx objects to, as interfering with its "business model," is having to "pay for each and every one of those expenses *directly*, rather than through generous, above-market compensation for the delivery service that takes into account the costs of doing business." Br. at 31 (emphasis added).

---

[5] Specifically, FedEx says that, under the OA, it first "*compensated Plaintiffs for their services* in a weekly 'settlement,' ... based on an incentive-laden formula that included the number of package pick-ups and deliveries, the number of stops made, and the density of their routes." Br. at 6 (emphasis added). Then, "in addition to the above elements of the settlement formula, Plaintiffs received multiple forms of supplemental *compensation to defray their expenses*: 1) a daily Van Availability Settlement ... 2) a Daily Mileage Settlement ... and 3) a Fuel/Mileage Settlement...." Br. at 7 (emphasis added). Plaintiffs' SJC brief agreed that FedEx had, through the second and third "settlements," provided some explicit reimbursement for some vehicle expenses, which to that extent could not be recovered as damages. But Plaintiffs denied that these settlements fully covered their vehicle expenses, and they disputed whether the first "settlement" (actually called a "Contractor and Van Availability Settlement," R. 264, 291) was reimbursement for vehicle expenses, as FedEx asserted, rather than including payment for labor, as its text suggests. RJN Ex. 1 at 34-36 & n.21; *see supra* n.3.

**3. Net Effect of Wage Act Compliance**.  FedEx thus does not and cannot claim that Wage Act compliance would have any significant effect on its costs, let alone its prices.  It says its total compensation package already covers all expenses that are arguably its own business expenses and still nets drivers ample pay for their labor.  If so, then treating drivers as employees under the Wage Act would merely require accounting changes, affecting only *how* FedEx pays the drivers, not *how much* it pays them.[6]

This Court therefore need not (and should not) determine whether the Attorney General is correct as a state-law matter in her views regarding FedEx's deduction and reimbursement policies, or instead whether FedEx has lesser obligations, as FedEx's SJC brief argued.  *See* RJN Ex. 2.  Those questions are ultimately for the SJC.  The question before this Court is different:  whether Wage Act compliance would have a "significant impact" on FedEx's prices, routes, or services. At least as to prices, FedEx itself has already answered that question, "No."

FedEx's claim is instead limited to an effect on "services," which FedEx says—without support in record evidence or logical inferences—would somehow be drastically altered if drivers had fewer financial incentives to keep costs low.

---

[6]  Even if compliance with the Wage Act produced some increase in labor costs, that would not be enough to lead to preemption.  *See infra* n.8.

But FedEx has never responded to Plaintiffs' and the Attorney General's point that Massachusetts wage laws do not bar employers from paying incentive pay or performance bonuses, so long as employees earn at least minimum wage.  Pl. Br. at 35-36; Pl. Reply Br. at 14 & n.14; AG Amicus Br. at 8 n.6.

## II.     FedEx Has Not Shown that the Other Laws § 148B Triggers, in M.G.L. Chapters 149 and 151, Would Have Any "Significant Impact" on FedEx's Prices, Routes, or Services.

On this record, the remaining laws that § 148B triggers—certain provisions of M.G.L. chapters 149 and 151—would have no "significant impact" on FedEx's prices, routes, or services.  FedEx has not carried its burden of providing record evidence (despite ample opportunity to do so) or logical-effects analysis of any of the laws its brief suggests that § 148B triggers, and Plaintiffs and the Attorney General cannot be expected to prove a negative.[7]  And even if *some* impact on labor costs could be inferred, that is not enough to cause FAAAA preemption—as

---

[7]   The type of "potential" logical effects that this Court has said could lead to preemption, *MDA v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014), cannot mean merely "possible" effects.  To be considered "significant," such "potential" effects must be sufficiently certain to occur that a court can fairly treat them as established, without the need for evidence, and without affording the State (or other party opposing preemption) the opportunity to present contrary evidence.  *See id*. (statute's "potential" impact on carriers' prices, routes, and services is insufficient if merely "tenuous, remote, or peripheral").

10

FedEx conceded at oral argument with respect to a minimum wage law (34:45).[8]

The Attorney General nevertheless briefly addresses the effect of each of the laws FedEx has cited (Br. at 16, 27, 28 n.9).

- Maternity Leave:  M.G.L. c. 149, § 105D, requires that certain employees, if they give sufficient advance notice, be allowed up to 8 weeks of *unpaid* parental leave.  FedEx identifies no impact from this law.

- Overtime Pay:  Plaintiffs concede that, due to the weights of the vehicles they drive, M.G.L. c. 151, § 1A(8), makes them ineligible for overtime pay.  Pl. Br.

---

[8]  FAAAA preemption occurs "where state laws have a significant impact *related to Congress' deregulatory and pre-emption-related objectives*[.]"  *Rowe v. N.H. Motor Transp. Ass'n*, 522 U.S. 364, 371 (2008) (emphasis added; internal quotations omitted).  Nothing in the FAAAA's language or legislative history suggests that Congress' objective was to insulate motor carriers from laws that increase the costs of doing business and thus might indirectly affect prices.  Congress was concerned with states' "economic regulation" of motor carriers, *e.g.*, "tariff filing and price regulation."  AG Amicus Br. at 11-12 (quoting legislative history).  Section 148B does not tell FedEx what prices it must or must not charge, any more than does a minimum wage or fuel tax law.  A law that applies to all carriers (and other businesses) in their capacity as employers or proprietors, and that might indirectly cause some price increase, is a far cry from what Congress meant to prohibit:  "a State's direct substitution of its own governmental commands for competitive market forces in determining (to a significant degree)" the prices a carrier charges.  *See Rowe*, 522 U.S. at 372 (internal quotations omitted) (discussing Congress' objectives as to "the services that motor carriers will provide"); AG Amicus Br. at 14-15, 19, 21 n.11; *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 87-88 (1st Cir. 2011) (recognizing preemption "dividing line" between (1) laws that "directly regulate[] how [a carrier's] service is performed and how its price is displayed to customers," and (2) laws that regulate "merely how the [carrier] behaves as an employer or proprietor"); *see also Amerijet Int'l, Inc. v. Miami-Dade Cnty., Fla.*, No. 14-11401, 2015 WL 5515343, at *6-7 & n.4 (11th Cir. Sept. 21, 2015) (living-wage ordinance not ADA-preempted merely because it might raise carrier's costs and thus its prices; citing *DiFiore*); *Filo Foods, LLC v. City of SeaTac*, 183 Wash. 2d 770, 357 P.3d 1040, 1058-59 (2015) (*en banc*) (same).

at 44 & n.25; Pl. Reply Br. at 17-18.  The record is silent on whether any FedEx drivers use vehicles that do not disqualify them from overtime, or whether and how often any such drivers are required to work more than 40 hours per week.

- Meal Breaks:  "No person shall be required to work for more than six hours during a calendar day without an interval of at least thirty minutes for a meal." M.G.L. c. 149, § 100.  Meal-break time is not "working time," 455 C.M.R. 2.01, and so is unpaid. The record is silent on whether FedEx has set up any routes that require over six hours of continuous driving, or on whether its drivers already take meal breaks, in which case the meal-break law would have no impact.  *See also Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647-49 (9th Cir. 2014) (state meal- and rest-break laws were not FAAAA-preempted; they allowed individual employees to take breaks but did not bar carriers from offering service during that time and so, at most, modestly increased labor costs).

- Minimum Wage:  FedEx says that, even allowing for the expenses its drivers bear, they earn "well above market rate."  Br. at 8, 31.  Since FedEx calculates "market rate" based on what employee-drivers earn, Br. at 8, which must be at least minimum wage (and according to FedEx is substantially more: $17/hour assuming a 2000-hour year, Br. at 8), requiring FedEx to pay employee-drivers at least minimum wage under M.G.L. c. 151, § 1, would have no impact.

- Workers Compensation and Tax Withholding:  Section 148B's definition of "employee" does not trigger these requirements under M.G.L. c. 152 or c. 62B. *See* AG Amicus Br. at 6 n.1 (citing *Sebago*, 471 Mass. at 337-38 & nn.12-14, 28 N.E.3d at 1153-54 & nn.12-14).

- Sunday Work:  M.G.L. c. 149, § 47, provides that any employee *required* to work on Sunday must be allowed one day off in the next six.  The record is silent on whether FedEx drivers are ever required (versus allowed at their own request) to work on Sundays.  Indeed, FedEx's website suggests by omission that it does not offer Sunday service.  *See* "Does FedEx offer weekend delivery?" at http://www.fedex.com/us/customersupport/shipping/; "Can I schedule a pickup for Saturday?" at http://www.fedex.com/us/customer support/shipping/pickup/ (both last visited 11/16/15).

- Other Laws Limiting Days of Work:  M.G.L. c. 149, §§ 48-51, implement section 48's general rule requiring an employer at a "manufacturing, mechanical or mercantile establishment or workshop," to furnish one day's rest

out of every seven consecutive days. The quoted terms are defined in M.G.L. c. 149, § 1, and none of the definitions covers a delivery service like FedEx.

- <u>Recordkeeping</u>: M.G.L. c. 149, § 52, and M.G.L. c. 151, § 15, require employers to keep records of employees' names, addresses, occupations, hours worked each day and each week, and amounts paid each pay period. FedEx obviously already keeps records of drivers' names, addresses, occupations, and amounts paid, and cannot seriously claim that keeping records of the hours they work each day and week would have any significant impact on prices, routes, or services. Finally, M.G.L. c. 149, § 52C, does not require an employer to create any other records, providing instead that "to the extent prepared by an employer," certain records be maintained and made accessible to the employee.

### III. Section 148B Does Not Prevent FedEx From Contracting Out Its First- and Last-Mile Delivery Functions.

FedEx erroneously said at oral argument (34:05) that "everyone agrees that [§ 148B] would preclude motor carriers from ever using independent contractors in Massachusetts." The Attorney General agrees only that § 148B's Prong 2 makes it quite difficult for carriers like FedEx to treat *individual drivers* as independent contractors, rather than employees, *under those sections of M.G.L. chapters 149 and 151 that § 148B triggers*. Section 148B does not prevent FedEx from treating drivers as independent contractors under any other laws. AG Amicus Br. at 5-7.

Moreover, § 148B does not prevent FedEx from entering into business-to-business relationships with persons or entities that are legitimate independent contractors, hiring their own drivers as employees to perform FedEx's pickups and deliveries. FedEx acknowledged this at oral argument (31:15), and the Kornn Declaration offered by FedEx (R. 520), so far as it goes, suggests that FedEx has

13

been using this model since at least 2004.  Kornn is hardly an isolated example.

*See Debnam v. FedEx Home Delivery*, 2013 WL 5434142 (D. Mass. Sept. 27,

2013) (O'Toole, J.) (driver who also employed other drivers to service up to nine

FedEx routes at a time was independent contractor, engaged in "legitimate ...

business-to-business relationship" with FedEx); *see also Debnam v. FedEx Home*

*Delivery*, 766 F.3d 93, 94-95 (1st Cir. 2014) (reciting Debnam's factual allegations

about his relationship with FedEx, dating back to 2004).  FedEx's brief outlines

how the OA itself envisions such arrangements developing, by (1) allowing drivers

to "sell their routes in the open market to another contractor or a third party," and

(2) providing that contractors "could, but were not required to, personally perform"

services along their routes and could instead "employ or provide person(s)" to do

so.  Br. at 6 (citing and quoting OA).   In short, § 148B does not prevent FedEx

from contracting out its first- and last-mile delivery functions.

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's

judgment.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL OF
MASSACHUSETTS

/s/Peter Sacks
Peter Sacks (1st Cir. No. 25564)

State Solicitor
Elizabeth N. Dewar (1st Cir. No. 1149723)
Assistant State Solicitor
One Ashburton Place
Boston, MA  02108
617-963-2064
peter.sacks@state.ma.us
bessie.dewar@state.ma.us

November 16, 2015

## CERTIFICATES OF COMPLIANCE AND SERVICE

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This Brief complies with the length limitation of Fed. R. App. P. 32, in that it is limited to 15 pages as ordered by the Court under Fed. R. App. P. 32(e), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman style, 14-point font.

/s/Peter Sacks
Peter Sacks (1st Cir. No. 25564)
State Solicitor
*Counsel for the Amicus Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Harold L. Lichten
Shannon Liss-Riordan
Lichten & Liss-Riordan PC
729 Boylston St., Suite 2000
Boston, MA 02116

William M. Jay
Goodwin Procter LLP
901 New York Ave., N.W.
Washington, DC 20001

James C. Rehnquist
Kate Elizabeth MacLeman

Molly Grammel
Caroline H. Cochenour
Goodwin Procter LLP
53 State Street
Boston, MA 02109

/s/Peter Sacks
Peter Sacks (1st Cir. No. 25564)
State Solicitor