No. 15-1214

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

————————————

CLAYTON SCHWANN, individually and on behalf of a class of all others similarly situated; THOMAS LEDUC, individually and on behalf of a class of all others similarly situated; RAMON HELEODORO, individually and on behalf of a class of all others similarly situated; JAMES E. DUGGAN, individually and on behalf of a class of all others similarly situated; ERIC VITALE, individually and on behalf of a class of all others similarly situated; MUCHIRAHONDO PHINNIAS, individually and on behalf of a class of all others similarly situated; TEMISTOCLES SANTOS, individually and on behalf of a class of all others similarly situated; ROBERT SANGSTER, individually and on behalf of a class of all others similarly situated; JEFF BAYLIES; LAWRENCE ADAMS

*Plaintiffs – Appellants,*

MARVIN SANTIAGO, individually and on behalf of a class of all others similarly situated; MANUEL MONTROND, individually and on behalf of a class of all others similarly; SERRULO FERNANDEZ DEJESUS, individually and on behalf of a class of all others similarly situated; WAN PYO CONG, individually and on behalf of a class of all others similarly situated; LEON HECTOR

*Plaintiffs,*

v.

FEDEX GROUND PACKAGE SYSTEM, INC.

*Defendant – Appellee.*

On Appeal from the United States District Court
for the District of Massachusetts

————————————

## APPELLEE FEDEX GROUND PACKAGE SYSTEM, INC.'S
## SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER

————————————

## <u>COUNSEL FOR DEFENDANT-APPELLEE</u>

James C. Rehnquist (1st Cir. # 38952)
Kate E. MacLeman (1st Cir. # 1161337)
GOODWIN PROCTER LLP
Exchange Place, 53 State Street
Boston, MA 02109
Tel.:  (617) 570-1000
Fax:  (617) 523-1231
jrehnquist@goodwinprocter.com
kmacleman@goodwinprocter.com

William M. Jay (1st Cir. # 111872)
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, DC  20001
Tel.:  (202) 346-4000
Fax: (202) 346-4444
wjay@goodwinprocter.com


*Counsel for Defendant-Appellee*


Dated: November 16, 2015

## TABLE OF CONTENTS

**Page**

INTRODUCTION……...……………………………………………………1

ARGUMENT……...…………………………………………………………2

I.    Section 148B Directly Implicates Various Requirements of
      Chapters 149 And 151 ........................................................................3

II.   Section 148B Potentially Implicates Other Incidents of
      Employment, Including Expense Reimbursement And Entitlement
      To Workers' Compensation Insurance .......................................................9

CONCLUSION................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Awuah v Coverall*,
   460 Mass. 484 (2011) ................................................................11

*Brooks v. Halsted Commc'ns, Ltd.*,
   620 F. Supp. 2d 193 (D. Mass. 2009)..........................................6

*DiFiore v. Am. Airlines*,
   646 F. 3d 81 (1st Cir. 2011).................................................1, 10

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000)......................................................................1

*In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, No.
   MDL-1700, 2010 WL 2243246 (N.D. Ind. May 28, 2010)...............13

*Mass. Delivery Ass'n v. Healey*,
   No. 10-11521, 2015 WL 4111413 (D. Mass. July 8, 2015).......................*passim*

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008)..............................................................2, 3, 5

*N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66 (1st Cir. 2006) ...........................2

*Tidd v. Adecco USA, Inc.*, No. 07-11214, 2008 WL 42865512 (D.
   Mass. Sept. 17, 2008)..................................................................6

*Wells v. FedEx Ground Package Sys., Inc.*, 979 F. Supp. 2d 1006
   (E.D. Mo. 2013).............................................................................7

**Statutes**

Mass. Gen. Laws c. 62B, § 1 .............................................................14

Mass. Gen. Laws c. 149, § 6D ............................................................8

Mass. Gen. Laws c. 149, § 19 ............................................................9

Mass. Gen. Laws c. 149, § 19A ..........................................................8

Mass. Gen. Laws c. 149, § 19B ............................................................... 9

Mass. Gen. Laws c. 149, § 20 ................................................................. 8

Mass. Gen. Laws c. 149, § 22 ................................................................. 8

Mass. Gen. Laws c. 149, § 22A ............................................................... 8

Mass. Gen. Laws c. 149, § 23 ................................................................. 8

Mass. Gen. Laws c. 149, § 23A ............................................................... 8

Mass. Gen. Laws c. 149, § 24 ................................................................. 8

Mass. Gen. Laws c. 149, § 24A ............................................................... 9

Mass. Gen. Laws c. 149, § 24D ............................................................... 8

Mass. Gen. Laws c. 149, § 27C ........................................................ *passim*

Mass. Gen. Laws c. 149, § 27C(a)(1) ............................................... 10, 11

Mass. Gen. Laws c. 149, § 47 ............................................................. 3, 5

Mass. Gen. Laws c. 149, § 52 ................................................................. 8

Mass. Gen. Laws c. 149, § 52A½ ....................................................... 5, 6

Mass. Gen. Laws c. 149, § 52C ............................................................... 8

Mass. Gen. Laws c. 149, § 62 ................................................................. 9

Mass. Gen. Laws c. 149, § 66 ................................................................. 9

Mass. Gen. Laws c. 149, § 67 ................................................................. 9

Mass. Gen. Laws c. 149, § 100 ............................................................... 4

Mass. Gen. Laws c. 149, § 103 ............................................................... 8

Mass. Gen. Laws c. 149, § 105A ............................................................. 9

Mass. Gen. Laws c. 149, § 105D ............................................................. 4

Mass. Gen. Laws c. 149, § 148 ........................................................................1, 8, 11

Mass. Gen. Laws c. 149, § 148B ...........................................................................*passim*

Mass. Gen. Laws c. 149, § 148B(d)........................................................2, 9, 13

Mass. Gen. Laws c. 149, § 148B(a) ............................................................1, 3, 14

Mass. Gen. Laws c. 149, § 148C ......................................................................4

Mass. Gen. Laws c. 151, § 1A ..........................................................................6

Mass. Gen. Laws c. 151, § 1A(8) ......................................................................6

Mass. Gen. Laws c. 151, § 1B ..........................................................................6, 9

Mass. Gen. Laws c. 151, § 19 ..........................................................................9

Mass. Gen. Laws c. 151A, § 2 ........................................................................13

Mass. Gen. Laws c. 151A, § 15(a) ....................................................................13

Mass. Gen. Laws c. 151B, § 1(5)......................................................................4

Mass. Gen. Laws c. 152, § 1(4) ......................................................................14

## Other Authorities

49 C.F.R. Part 395...........................................................................................8

454 C.M.R. § 27.04(2)………………………………………………………....…8

**APPELLEE FEDEX GROUND PACKAGE SYSTEM, INC.'s
<u>SUPPLEMENTAL BRIEF PURSUANT TO COURT ORDER</u>**

## INTRODUCTION

At oral argument on November 2, 2015, this Court ordered supplemental briefing on the legal obligations imposed on motor carriers by Prong Two of Mass. Gen. Laws c. 149, § 148B(a) ("Section 148B"). As the Court's request recognizes, the practical effect of Section 148B is not limited to the particular types of damages that Plaintiffs have expressly sought in this litigation under their view of the Wage Act, c. 149, § 148. Classification as an "employee" under Section 148B has a host of other consequences, and "pre-emption cases ordinarily *assume* compliance with the state-law duty in question." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 882 (2000). As Plaintiffs' counsel recently stated at oral argument before the Seventh Circuit, Section 148B "involves many, many labor statutes." Oral Argument at 25:48-26:01, *Costello v. BeavEx*, No. 15-1110 (7th Cir. argued Sept. 18, 2015), *available at* http://media.ca7.uscourts.gov/oralArguments/oar.jsp.

To some extent, both the reach of Section 148B and the consequences of a misclassification finding under that provision are not fully clear. But as this Court has recognized, federal preemption under the FAAAA and its sibling statute is triggered by the *threat* of liability under a state statute; the federal law does not sit idly by, waiting for a final damages judgment or injunction. *DiFiore v. Am. Airlines*, 646 F. 3d 81, 89 (1st Cir. 2011) (finding tips law preempted, in part, because

even if defendant took steps to adhere to the potentially-preempted law, "it could hardly be sure that it would be safe" when potential liability and damages are decided by a jury). Indeed, if FedEx Ground guesses wrong as to its obligations under Massachusetts labor laws, both it and its individual officers could be subject to civil and criminal penalties. *See* Mass. Gen. Laws c. 149, § 148B(d); Mass. Gen. Laws c. 149, § 27C (incorporated by Section 148B).

Individual motor carriers' responses to uncertainty are not relevant in any event, because the preemption analysis is not limited to the present practices of a single motor carrier. *See Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 373 (2008) (state law cannot, consistent with FAAAA, "freeze into place and immunize from competition a service-related system that carriers do not (or in the future might not) wish to provide"); *see also N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 72-73 (1st Cir. 2006) (preemption not "judged on a carrier-specific basis"), *aff'd*, 552 U.S. 364 (2008).

Accordingly, this brief addresses both the statutes that Section 148B clearly triggers and those that Section 148B potentially implicates. This brief does not recapitulate the other aspects of FedEx Ground's arguments that are not directly responsive to the Court's request.

## ARGUMENT

## I.  Section 148B Directly Implicates Various Requirements of Chapters 149 And 151

Unless a business carries its burden under Prong Two (as well as the other prongs), an individual performing any service for that business "shall be considered to be an employee" "[f]or the purpose of this chapter [chapter 149] and chapter 151."  Mass. Gen. Laws c. 149, § 148B(a).  Chapter 149 sets out a host of labor regulations, many of which apply to all employees subject to Massachusetts's jurisdiction.  And Chapter 151 sets wage-payment obligations.

A.      Triggering employee status under Chapter 149 would subject FedEx Ground to numerous provisions that logically would substantially affect how FedEx Ground provides services in Massachusetts.  Specifically, Chapter 149 would require FedEx Ground to provide drivers with 1) a day off from work per week;[1] 2)

---

[1]  *See* Mass. Gen. Laws. c. 149, § 47 (Sunday work statute mandating Sundays off for "employees" unless he or she is allowed 24 consecutive hours' rest during ensuing six days).  FedEx Ground contractors are incentivized to work on at least some Sundays.  R.291 (Operating Agreement ("OA") Add. 3, providing "van availability bonus" for working day before and after various holidays, including on weekends).  That contractors may not normally work Sundays does not change the relevant analysis, which is  whether Prong Two impermissibly binds FedEx Ground to a particular service, or prohibits FedEx Ground from offering a service—here, Sunday delivery.  *Rowe*, 552 U.S. at 372 (the FAAAA "sought to avoid … a State's direct substitution of its own governmental commands … in determining (to a significant degree) the services that motor carriers will provide.").

eight weeks parental leave;[2] 3) earned sick time "based on hours worked";[3] 4) daily meal breaks;[4] and 5) if veterans, time off to attend veterans' ceremonies.[5]

These statutory obligations would regulate how FedEx Ground structures its services and how drivers perform pickup and delivery. Under the OA that FedEx Ground entered into with Plaintiffs, FedEx Ground contracts for pickup and delivery services within a particular service area; contractors own the rights to their service areas, can make more money by developing more customers, and can sell their areas at a profit. *E.g.*, R.866, at 191:4-6 (sold vehicle and route for $20,000); R.675-76, at 135:21-136:21 (sold route for $36,000 and truck for $10,000); R.683-84, at 81:18-82:4 (sold route and truck for $35,000). FedEx Ground does not then "staff" any service area or any specific route; the contractor organizes the route(s) within a service area and ensures staffing of drivers on those routes. R.521-523 ¶¶

---

[2]  *See* Mass. Gen. Laws c. 149, § 105D (parental leave statute, requiring employers to provide 8 weeks of parental leave to qualifying "employee[s]," and requiring that employers keep posted in a conspicuous place upon its premises a notice describing this section and the employer's policies related thereto). While Section 105D cross-references another definition of "employer," Mass. Gen. Laws c. 151B, § 1(5), that provision contains exceptions for social clubs and small employers; it does not establish who is an employee rather than an independent contractor.

[3]  *See* Mass. Gen. Laws c. 149, § 148C (earned sick-time statute providing that non-compliance may result in criminal and civil penalties). The sick-time statute contains its own definitions of "employee" and "employer," but each references the other in circular fashion, making the possible applicability of Section 148B open to question.

[4]  *See* Mass. Gen. Laws c. 149, § 100 (meal break statute requiring that "employer[s]" give a 30-minute meal break for every six hours worked).

4, 6, 13 (Declaration of FedEx Ground contractor Matthew Kornn, attesting that he and his drivers are "free to decide the order in which packages should be delivered and whether to swap packages for delivery," and that when he was a driver he chose his own order of pickup and delivery "because by doing so [he] could increase [his] efficiency and subsequently [his] profit margin"). Further, if the contractor wishes not to drive on a given day, he is responsible for retaining and paying his own substitute. If the contractor were covered by the day-off, leave, and break statutes, by contrast, he would have no such obligation; *FedEx Ground* would become required to arrange pickup and delivery service in that contractor's stead. Thus, for example, if the contractor were entitled to a day of rest under Mass. Gen. Laws c. 149, § 47 on a day when there are packages to be delivered to that contractor's service area, FedEx Ground would itself be responsible for arranging a driver. That is just the sort of "state service-determining law[]" that is preempted because it "could easily lead to a . . . state regulatory patchwork [that] is inconsistent with Congress's major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Rowe*, 552 U.S. at 373.

Indeed, on remand in the *MDA* litigation, the Attorney General essentially conceded the practical effects of complying with the day-off, leave, and break statutes; she contended instead that motor carriers would find drivers who are willing

---

[5] *See* Mass. Gen. Laws c. 149, § 52A½ (veteran participation statute allowing vet-

to waive their statutory entitlements. *Mass. Delivery Ass'n v. Healey*, No. 10-11521, 2015 WL 4111413, at *5 (D. Mass. July 8, 2015). As the district court in that case correctly observed, "[a] delivery company cannot be forced to conduct its business in reliance upon finding workers willing to waive their statutorily provided entitlements." *Id.*

B.    Similar effects would come from the requirement to pay overtime, another consequence of employee status under Section 148B. The definition of "employee" in Section 148B applies to Chapter 151, which requires employers to pay time-and-a-half wages for overtime or else face criminal and civil penalties.[6] While Plaintiffs assert that *they* were exempt from overtime, that certainly does not establish that *motor carriers* are exempt from paying overtime, or even that FedEx Ground would be exempt. Plaintiffs were apparently exempt because they drove vehicles with a gross vehicle weight rating of at least 10,001 pounds. *See* Appellants' Br. at 44; Mass. Gen. Laws c. 151, § 1A(8); *Brooks v. Halsted Commc'ns, Ltd.*, 620 F. Supp. 2d 193 (D. Mass. 2009). But not all FedEx Ground drivers' vehicles are above that threshold. R.499, R.532; *see also Tidd v. Adecco USA, Inc.*, No. 07-11214, 2008 WL 42865512, at *3 (D. Mass. Sept. 17, 2008) (acknowledg-

---

erans leave of absence to participate in Veterans or Memorial Day exercises).

[6] *See* Mass. Gen. Laws c. 151, § 1A (overtime law requiring employer to pay one and one-half times the regular rate of pay for employees working more than forty hours in a week). *See also* Mass. Gen. Laws c. 151, § 1B (setting forth penalties for violations of § 1A).

6

ing FedEx Ground's use of a mixed fleet).  While Plaintiffs will likely cite *Tidd* for

the proposition that FedEx Ground contractors would not be entitled to overtime

even when driving nonexempt vehicles, "[c]ourts that have considered the issue of

a 'mixed fleet' of both commercial and noncommercial vehicles are divided on the

proper approach," and "the prevailing view" awards overtime under some circum-

stances.  *Wells v. FedEx Ground Package Sys., Inc.*, 979 F. Supp. 2d 1006, 1033

(E.D. Mo. 2013).  And in fact, Plaintiffs' counsel previously sued FedEx Ground

for overtime violations under Massachusetts law in the precursor to this case.[7]

Overtime requirements have a natural and logical effect on the routes and

services a motor carrier offers.  Drivers who pick up and deliver FedEx Ground

packages sometimes work more than eight hours per day, *see* R.867, at 192:9-13,

at least in part because contractors own their routes,  R.266-67, 277-78 (OA §§ 5.1,

5.3, 18), and seek opportunities to deliver more packages.  *See, e.g.*,  R.521-523 ¶¶

4, 6, 13.  Heightened pay obligations after eight hours logically will force a recon-

figuration of delivery routes given the natural incentive to avoid paying premium

compensation if not necessary.

---

[7]  *See* 7th Am. Class Action Compl. ¶¶ 214-217, *Sheehan v. FedEx Ground Pack-age Sys., Inc.*, No. 05-10936 (D. Mass. filed April 4, 2011), ECF No. 2227 (stating that "[t]he Plaintiffs and various class members operate vehicles with a gross vehi-cle weight rating of less than 10,001 pounds," and that "[p]ersons who operate such vehicles are not subject to the maximum hours regulations promulgated pur-suant to the Federal Motor Carrier Safety Act and are therefore not exempt from the overtime requirements pursuant to M.G.L. ch.151, § 1A").

Employee status under Section 148B, and thus under Chapter 151, would also impose significant additional recordkeeping requirements.  FedEx Ground would have to monitor and record each driver's hours and daily schedules to calculate accrued sick time, provide proper meal breaks and days off, and to ensure that no route requires a driver to work unpaid overtime.[8]  FedEx Ground would also be required to adhere to various additional recordkeeping requirements, including maintaining records of employees' hours and pay (Mass. Gen. Laws c. 149, § 148; c. 151, § 15) and their ages (Mass. Gen. Laws c. 149, § 24D); observing timekeeping requirements on employers and documenting wage deductions on pay slips (Mass. Gen. Laws c. 149, §§ 52, 149, 150A);  preserving personnel files, including various specified types of records, for at least three years (Mass. Gen. Laws c. 149, § 52C); and furnishing medical records to employees upon request (Mass. Gen. Laws c. 149, § 19A).[9]  Employer status under Prong Two also triggers compliance with a litany of other administrative and collective bargaining regulations.[10]

---

[8]  While FedEx Ground keeps track of drivers' "hours of service" for Department of Transportation regulatory purposes, 49 C.F.R. Part 395 ("Hours of Service of Drivers"), these hours are not the equivalent of hours worked under the Massachusetts employment laws.

[9]  Employee status under Section 148B, and thus under Chapter 151, also triggers FedEx Ground's obligation to pay for waiting time under certain circumstances. 454 C.M.R. § 27.04(2).

[10]  *See* Mass. Gen. Laws c. 149, §§ 20, 22, 22A, 23, 23A, 24 (prohibiting various activities during strikes, including advertising and hiring, and prohibiting written agreements not to join unions); *see also* Chapter 149, § 103 (requiring employers to provide suitable seats); Mass. Gen. Laws c. 149, § 6D (prohibiting retaliation for

Any violation of these provisions comes with its share of financial and other significant consequences, including treble damages, civil or criminal penalties, and potentially even individual officer liability.  Mass. Gen. Laws c. 149, § 27C; c. 151, §§ 1B and 19.

## II.    Section 148B Potentially Implicates Other Incidents of Employment, Including Expense Reimbursement And Entitlement To Workers' Compensation Insurance

The full extent of Section 148B's scope is not entirely clear; there is a substantial possibility that employee status under Prong Two will trigger other significant potential consequences.  An employer in Massachusetts, or an interstate employer doing business in Massachusetts, cannot be certain of its obligations in light of the lack of clarity in Massachusetts law.  As noted above, civil and criminal penalties apply when an employer "fails to properly classify an individual as an employee according to [Section 148B] and in so doing fails to comply, in any respect, with" numerous other provisions of Chapters 62B, 149, 151, and 152.  Mass. Gen. Laws c. 149, § 148B(d).  The penalty statute makes no mention of knowledge of the law, either as an element or as a defense.  Similarly, the incorporated penalty

---

asbestos complaints); Mass. Gen. Laws c. 149, § 19 (prohibiting, broadly, certain actions that tend to restrain "employment"); Mass. Gen. Laws c. 149, § 19B (banning use of lie detector tests as a condition of employment and requiring notice ban on all applications). Massachusetts law also regulates hiring based on age and sex. *See* Mass. Gen. Laws c. 149, §§ 62, 66, 67 (regulating the hiring of minors); Mass. Gen. Laws c. 149, § 24A (prohibiting age discrimination); Mass. Gen. Laws c. 149, § 105A (prohibiting sex discrimination).

provision, Section 27C, expressly provides for civil and criminal penalties for actions "without a willful intent" that violate Section 148B or various other provisions of chapters 149 and 151.  Mass. Gen. Laws c. 149, § 27C(a)(2).[11]  Accordingly, an employer "could hardly be sure that it would be safe" from liability under these statutes triggered by failure to comply with Prong Two of Section 148B. *DiFiore*, 646 F.3d at 89.

A.     As discussed in the briefing and at oral argument, the most significant potential consequence is the possibility that FedEx Ground must reimburse business expenses paid by contractors reclassified as employees as a result of Prong Two.  The District Court in this case found these issues sufficiently unsettled under Massachusetts law that it certified questions to the Supreme Judicial Court regarding whether the Wage Act creates an employee right to expense reimbursement and prohibits certain deductions from compensation.  SA95. The SJC accepted certification, but did not decide the certified questions in light of the District Court's decision on preemption.

Whether an employee has a right to expense reimbursement remains unclear.  But since the beginning of this case, Plaintiffs have fought for all expenses they incurred as a result of their "employment."  R. 31, ¶¶ 13,14 (alleging that they were "forced to incur significant deductions from their pay . . . significant costs perform-

---

[11]  Willful violations carry heightened penalties.  *See* Mass. Gen. Laws c. 149,

ing their work such as insurance payments, truck payments, gas payment, and other expenses of doing business"). And just days before oral argument, Plaintiffs' counsel filed a complaint in Suffolk Superior Court on behalf of a class of pick-up and delivery drivers that contracted with courier companies BeavEx, Inc. and Google Express, alleging the drivers are misclassified under Section 148B and owed expense reimbursement under Mass. Gen. Laws c. 149, § 148. Compl. ¶ 35 , *Coorey v. Google*, No. 15-3311 (Mass. Super. Ct. filed Oct. 30, 2015).

That broad theory of expense reimbursement would have sufficient practical consequences, even standing alone, to work the prohibited "significant effect" on prices, routes, or services. Plaintiffs contend that FedEx Ground should have borne the cost of "purchas[ing]" the trucks that they used to make FedEx Ground deliveries (and could have used for other businesses as well). Request for Judicial Notice Ex. 1, at 28. But the practical implication of making FedEx Ground pay to purchase and maintain the vehicles will be to force FedEx Ground to own the vehicles; otherwise FedEx Ground would pay all the costs of ownership but recover none of the proceeds if the truck is sold (which can be substantial, *see* Appellee's Br. at 7). Compelling FedEx Ground to own and operate a fleet of trucks would be an impermissible service-determining law.

---

§ 27C(a)(1).

The Attorney General declined to take a position at oral argument on whether FedEx Ground could be responsible for expense reimbursement, including expenses for workers' compensation insurance. Oral Argument at 14:50-16:25, *Schwann v. FedEx Ground Package Sys, Inc.*, No. 15-1214 (1st Cir. argued Nov. 2, 2015), *available at* http://media.ca1.uscourts.gov/files/audio/audiorss.php. Perhaps the Attorney General will do so in a brief filed simultaneously with this one. But even if the Attorney General were to disavow Plaintiffs' position today, the matter is not free from doubt—as shown by a brief the Attorney General filed in the SJC. In *Awuah v. Coverall North America, Inc.*, the Attorney General "ask[ed] this Court to rule that a misclassified employee is entitled to recover…ordinary business costs and expenses," because, she argued, "it is 'well established' that requiring employees to pay for expenses incurred for the benefit of an employer…operates as a *de facto* wage deduction" in violation of the Wage Act. Amicus Curiae Brief of the Commonwealth of Massachusetts at 6-7, 17, No. 10-829, *Awuah v Coverall*, 460 Mass. 484 (2011). And with respect to workers' compensation insurance, the Attorney General stated unequivocally that employers are "financially responsible for the costs of such insurance, and nothing in the legislative scheme suggests that the Legislature ever intended that employers could transfer such costs to employees." *Id*. at 38.

12

Indeed, the Attorney General specifically invoked the prospect of criminal prosecution.  She wrote: "The Act requires employers to secure and maintain workers' compensation coverage and aims to pressure employers into compliance not only by limiting an uninsured employer's defenses in tort, but additionally through criminal sanctions in which employers are held strictly liable."  *Id.* at 37 (citing *Brown v. Leighton*, 385 Mass. 757, 765 (1982)).

B.    Several other statutes turn on "employee" status, although they contain their own definition of the term rather than expressly relying on Section 148B's.  For example, the unemployment-insurance statute uses a definition that is highly similar to Section 148B; although Prong Two of that statute resembles Section 148B before the 2004 amendment, *see* Mass. Gen. Laws c. 151A, § 2, a number of jurisdictions have interpreted similar language in a way that no motor carrier could meet (just as no motor carrier could meet Prong Two of Section 148B).  *See, e.g.*, *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, No. MDL-1700, 2010 WL 2243246, at \*1-2 (N.D. Ind. May 28, 2010).  Failure to make the required payments under the unemployment-insurance law subjects the employer to penalties and interest.  *See* Mass. Gen. Laws c. 151A, § 15(a).

Other statutes, such as the workers' compensation (Chapter 152) and payroll tax (Chapter 62B) statutes, contain different definitions—but are nonetheless cross-referenced in Section 148B(d), so that a violation of Section 148B heightens

13

the penalties for an accompanying violation of Chapter 62B or 152.  *See* Mass. Gen. Laws c. 62B, § 1; Mass. Gen. Laws c. 152, § 1(4); *see also MDA*, 2015 WL 4111413, at *7-8 (discussing the differences between the definitions).  As the district court noted in *MDA*, however, "the logical effect of classification as an employee under Section 148B, which specifically mentions both Chapters 62B and 152, is to increase the likelihood of meeting the 'employee' definition provided in the latter statutes." 2015 WL 4111413, at *7.  Even if it is theoretically possible "to be employees under some statutes and to be independent contractors under others," the hybrid classification would itself "impose[] a significant burden on employers who must determine how to classify each worker with respect to each statute," and the district court in *MDA* had seen "no examples of such an arrangement operating in practice."  *Id.*

* * * * *

Classification as an employee under Section 148B has numerous consequences beyond those advanced in Plaintiffs' appellate brief and even in their complaint.  Those obligations, and the civil and criminal penalties for failing to carry them out, are among the key logical implications of Prong Two of Section 148B(a).  Those implications establish a significant effect on prices, routes, or services and require preemption by the FAAAA.

14

## CONCLUSION

For the foregoing reasons and those given in our answering brief and at oral argument, the judgment of the District Court should be affirmed.


Dated:  November 16, 2015                    Respectfully submitted,

                                             FEDEX GROUND PACKAGE
                                             SYSTEM, INC.,

                                             By its attorneys,

                                             /s/ William M. Jay
James C. Rehnquist (1st Cir. # 38952)        William M. Jay (1st Cir. # 111872)
Kate E. MacLeman (1st Cir. # 1161337)        GOODWIN PROCTER LLP
GOODWIN PROCTER LLP                          901 New York Ave., N.W.
Exchange Place, 53 State Street              Washington, DC  20001
Boston, MA 02109                             Tel.:  (202) 346-4000
Tel.:  (617) 570-1000                        Fax: (202) 346-4444
Fax:  (617) 523-1231                         wjay@goodwinprocter.com
jrehnquist@goodwinprocter.com
kmacleman@goodwinprocter.com

                                             *Counsel for Defendant-Appellee*

## **CERTIFICATE OF SERVICE**

I hereby certify pursuant to Fed. R. App. P. 25(d) that on November 16, 2015, I transmitted the foregoing to the Clerk of the United States Court of Appeals for the First Circuit through the Court's CM/ECF filing system.  I further certify that on that date, I served the counsel listed below, who is a Filing User, through the CM/ECF system.

Harold Lichten
Shannon Liss-Riordan
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

/s/ William M. Jay