No. 15-1214

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

CLAYTON SCHWANN, individually and on behalf of a class of all
others similarly situated; THOMAS LEDUC, individually and on
behalf of a class of all others similarly situated; RAMON
HELEODORO, individually and on behalf of a class of all others
similarly situated; JAMES E. DUGGAN, individually and on behalf
of a class of all others similarly situated; ERIC VITALE,
individually and on behalf of a class of all others similarly
situated; MUCHIRAHONDO PHINNIAS, individually and on behalf of a
class of all others similarly situated; TEMISTOCLES SANTOS,
individually and on behalf of a class of all others similarly
situated; ROBERT SANGSTER, individually and on behalf of a class
of all others similarly situated; JEFF BAYLIES; LAWRENCE ADAMS

Plaintiffs-Appellants

MARVIN SANTIAGO, individually and on behalf of a class of all
others similarly situated; MANUEL MONTROND, individually and on
behalf of a class of all others similarly situated; SERRULO
FERNANDEX DEJESUS, individually and on behalf of a class of all
others similarly situated; WAN PYO CONG, individually and on
behalf of a class of all others similarly situated; LEON HECTOR

Plaintiffs

v.

FEDEX GROUND PACKAGE SYSTEM, INC.

Defendant-Appellee

_____

On Appeal from a Judgment of the United States
District Court of Massachusetts

_____

**PLAINTIFF-APPELLANTS' SUPPLEMENTAL BRIEF**

_____

**Counsel for Appellants**

Harold L. Lichten, C.A.B. 22114
Shannon Liss-Riordan, C.A.B. 77877
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617)994-5800
hlichten@llrlaw.com
sliss@llrlaw.com


DATED: November 16, 2015

## TABLE OF CONTENTS

INTRODUCTION.................................................. 1

BRIEF STATEMENT OF FACTS RELEVANT TO THIS ANALYSIS............ 2

ARGUMENT..................................................... 5

   I. THE ONLY OBLIGATION TRIGGERED BY A FINDING OF EMPLOYMENT
      STATUS UNDER SECTION 148B IS FOR FEDEX TO PAY THE PLAINTIFFS
      THEIR FULL EARNED WAGES. .................................. 5

   II. EMPLOYEE STATUS UNDER SECTION 148B DOES NOT TRIGGER
      VIRTUALLY ANY OF THE OBLIGATIONS RAISED AS CONCERNS IN THIS
      CASE AND IN MDA......................................... 9

   III. THERE IS NO EVIDENCE THAT PRONG TWO OF SECTION 148B
      AFFECTS FEDEX'S PRICES, ROUTES, OR SERVICES. ........... 13

## TABLE OF AUTHORITIES

**Cases**

_Alexander v. FedEx Ground Package Sys., Inc._, 765 F.3d 981 (9th
    Cir. 2014) ................................................... 2

_Awuah v. Coverall North America, Inc._, 460 Mass. 484 (2011). 6, 7

_Ayala v. Antelope Valley Newspapers, Inc._, 210 Cal.App.4th 77,
    (2012) ...................................................... 9

_Brooks v. Halsted Comm., Ltd._, 620 F.Supp.2d 193 (D. Mass. 2009)
    ...................................................... 3, 12

_Californians for Safe & Competitive Dump Truck Transp. v.
    Mendonca_, 152 F.3d 1184 (9th Cir. 1998) ..................... 7

_Camara v. Attorney General_, 458 Mass. 756 (2011) .............. 6

_Carlson v. FedEx Ground Package Sys., Inc._, 787 F.3d 1313 (11th
    Cir. 2015) ................................................. 15

_Craig v. FedEx Ground Package Sys., Inc._, 335 P.3d 66 (Kan.
    2014) ...................................................... 2

_Croskey v. Estate of Cheyney_, 2011 WL 1807111 (D. Mont. May 6,
    2011) ...................................................... 9

_DiFiore v. American Airlines, Inc._, 646 F.3d 81 (1st Cir. 2011)
    ...................................................... 7, 13

_Estrada v. FedEx Ground Package Sys., Inc._, 64 Cal.Rptr.3d 327
    (Cal.Ct.App. Aug. 13, 2007) ................................ 3

_Fraelick v. PerkettPR, Inc._, 83 Mass.App.Ct. 698 (2013) ........ 8

_Gattuso v. Harte-Hanks Shoppers, Inc._, 169 P.3d 889 (Cal. 2007)
    ...................................................... 16

_Gray v. FedEx Ground Package Sys., Inc._, 799 F.3d 995 (8th Cir.
    2015) ...................................................... 2

_In re FedEx Ground Package Sys., Inc., Employ. Prac. Litig._, 758
    F.Supp.2d 638 (N.D. In. 2010) .............................. 2

_Martins v. 3PD, Inc._, 2014 WL 1271761 (D. Mass. Mar. 27, 2014). 7

_Mass. Delivery Assoc. v. Coakley_, 769 F.3d 11 (2014) ........... 1

_Rothwell v. Allstate Ins. Co._, 976 P.2d 512 (Mont. 1999) ....... 8

Schwann v. FedEx Ground Package Sys., Inc., 2013 WL 3353776 (D. Mass. Jul. 3, 2013) .......................................... 6

Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321 (2015).. 5, 10

Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033 (9th Cir. 2014) ............................................. 2

Tidd v. Adecco USA, Inc., 2008 WL 4286512 (D. Mass. Sept. 17, 2008) ............................................. 3, 13

Weems v. Citigroup Inc., 453 Mass. 147 (2009)................. 11

**Statutes**

454 C.M.R. § 27.02..................................... 10, 15

454 C.M.R. § 27.04(2)...................................... 11

830 C.M.R. 62B.2.1(3)(b)................................... 10

M.G.L. c. 149, § 105D...................................... 12

M.G.L. c. 149, § 148B...................................... 5, 6

M.G.L. c. 149, § 47........................................ 13

M.G.L. c. 149, § 52........................................ 12

M.G.L. c. 149, § 150....................................... 6

M.G.L. c. 149, §§ 48-51.................................... 13

M.G.L. c. 151A, §2(a-c).................................... 10

M.G.L., c. 151, § 1...................................... 3, 11

**Other Authorities**

BLACK'S LAW DICTIONARY 584 (9th ed. 2009)..................... 6

## INTRODUCTION

In response to this Court's request for supplemental briefing on the real and practical effects that a finding of employment status under prong two of M.G.L. c. 149, §148B, would have on FedEx Ground in this case, the Plaintiffs respond as follows. First, the Plaintiffs address the limited number of labor protective statutes found in chapters 149 and 151 that would actually apply to FedEx by application of prong two of section 148B. Second, the Plaintiffs will clarify which employment laws are not triggered by a finding of "employee" status under §148B, or, even if they are technically triggered, have no effect on FedEx's business. Third, the Plaintiffs examine FedEx's failure to produce any evidence that the select few labor laws that apply in this case actually impose any significant burden on FedEx's prices, routes, or services.

Unlike the facts asserted in Mass. Delivery Assoc. v. Coakley, 769 F.3d 11 (2014), FedEx is not an on-demand courier service that is required to keep drivers on call to respond sporadically the instant a customer requests a package delivery. Instead, the Plaintiffs' delivery work was a wholly integrated part of the FedEx system, where uniformed drivers were assigned a permanent fixed route that they drove every day starting at the FedEx terminal where they picked up their daily package load, and ending at their last delivery. Few, if any, of the

1

concerns asserted by the MDA apply to the Plaintiffs in this case, and more importantly, no changes to FedEx's prices, routes, or services are implicated by compliance with the limited number of statutes triggered by a finding of "employee" status under prong two of section 148B.

### BRIEF STATEMENT OF FACTS RELEVANT TO THIS ANALYSIS

The facts in this case can be gleaned from a fully developed summary judgment record, and are supported by the many court decisions directly relating to these same FedEx drivers in other states. See Gray v. FedEx Ground Package Sys., Inc., 799 F.3d 995 (8th Cir. 2015) (finding genuine issue of material fact that FedEx Ground drivers in Missouri were employees entitled to expense reimbursements and unpaid wages); Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66 (Kan. 2014)(FedEx drivers in Kansas seeking to recover unpaid wages and expenses are FedEx employees under Kansas law); Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033 (9th Cir. 2014); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981 (9th Cir. 2014); In re FedEx Ground Package Sys., Inc., Employ. Prac. Litig., 758 F.Supp.2d 638 (N.D. In. 2010) (finding FedEx Ground drivers in New Hampshire and Kentucky were employees as a matter of law); Estrada v. FedEx Ground Package Sys., Inc., 64 Cal.Rptr.3d 327 (Cal.Ct.App. Aug. 13, 2007) (FedEx Ground drivers in California were employees as a matter of law).

2

Each FedEx driver either leased or bought the truck that they used for their work at FedEx, and each driver was assigned an established route consisting of a specific geographic area. (R. 97, 111). Each plaintiff showed up in the morning at the FedEx terminal, had their packages loaded onto their truck, and then proceeded to make deliveries throughout the day until the last delivery was made. (R. 63, 66). The driver then either returned to the terminal and left the truck there, or took it home. Decl. of Thomas Leduc, ¶ 12 (R. 67); Decl. of Robert Brown, ¶ 4 (R. 493); see Operating Agreement, § 1.4 (R. 98). Because the Plaintiffs' trucks all had gross vehicle weight ratings over 10,001 pounds, the Plaintiffs are not entitled to overtime protections under Massachusetts or federal law. Brooks v. Halsted Comm., Ltd., 620 F.Supp.2d 193 (D. Mass. 2009) (Massachusetts adopted the Fair Labor Standards Act's exception to overtime requirements for drivers operating vehicles with a gross vehicle weight over 10,001 pounds), citing M.G.L. c. 151A, §1A(8); see also Tidd v. Adecco USA, Inc., 2008 WL 4286512, *1-4 (D. Mass. Sept. 17, 2008) (FedEx drivers held to be exempt from the Massachusetts overtime law).[1] It is undisputed that FedEx has

---

[1]    The Plaintiffs' affidavits to their motion for summary judgment establish that most drove "P-1000" trucks, signifying that the trucks were large in size. See, e.g., (R. 66, 69); Decl. of Robert Brown, ¶ 25 (R. 499).  For example, a search of the Vehicle Identification Number (VIN) for Plaintiff Muchirahondo's vehicle, which is listed in an addendum to his

no rule or policy preventing its drivers from taking a meal or rest break when they choose to do so, since FedEx has maintained that the drivers were "independent" and thus had discretion in such matters. The record evidence demonstrates that the drivers delivered packages five or six days a week, starting on either Monday or Tuesday working only through Saturday, and not on Sunday, since FedEx Ground does not deliver on Sundays. See, e.g., (R.64, 67, 70, 73, 76, 79). There is no evidence that Plaintiffs ever had "wait time" or provided "on demand" package delivery; rather, the evidence is that they received all the packages to be delivered each day in the morning, and that they then proceeded along their route throughout the day to deliver the packages loaded onto their trucks. Decl. of Robert Brown, ¶ 4 (R. 493).

Lastly, to support its operation, FedEx Ground employs thousands of additional workers who perform warehouse functions, supervisory functions, dispatch functions, and sorting functions, and FedEx labels these workers as employees. See, e.g., Decl. of Robert Brown, ¶ 1 (R. 493) (employed as an assistant manager of a FedEx terminal in Massachusetts); id. at

---

operating agreement (R. 129), using a database connected to the Federal Motor Carrier Safety Administration website, confirms that he drove a vehicle with a gross vehicle weight rating that exceeded 10,001 pounds. See FMCSA National Training Center website, <www.fmcsa.dot.gov/ntc/pages/relatedlinks> (linking to the VIN database found at <www.nisrinc.com/apps/cmvid>).

¶ 4 (FedEx employees load packages into the Plaintiffs' vehicles overnight); id. at ¶ 10 (FedEx employed approximately 100 to 150 employees, "including terminal management, package handlers, and clerical staff.").

**ARGUMENT**

**I.    THE ONLY OBLIGATION TRIGGERED BY A FINDING OF EMPLOYMENT STATUS UNDER SECTION 148B IS FOR FEDEX TO PAY THE PLAINTIFFS THEIR FULL EARNED WAGES.**

The plain language of Section 148B's three-prong test provides that it defines the term "employee" only "[f]or the purpose of [chapter 149] and chapter 151." M.G.L. c. 149, § 148B.  The Supreme Judicial Court has recently confirmed the argument that Plaintiffs and the Attorney General have made throughout this case: that section 148B serves as the definitional section only for certain statutes under Chapters 149 and 151, and no other statutes.  Specifically, in Sebago v. Boston Cab Dispatch, Inc., 471 Mass. 321, 338-39 and fn. 12-14 (2015), the SJC held that the definition of "employee" in section 148B does not apply to Chapter 151A (the unemployment compensation statute), Chapter 152 (the workers' compensation statute), Chapter 62B (state payroll taxes), or any other statutes outside chapters 149 and 151. Thus, nothing in section 148B prevents FedEx from classifying its drivers as independent contractors for purposes of these other laws' distinct definitions of employee status.

5

In this case, the Plaintiffs assert that they were FedEx's employees under all three prongs of section 148B,[2] and are therefore entitled to recover their full earned wages pursuant to the Massachusetts Wage Act, M.G.L. c. 149, §§ 148 and 150.[3] There can be no doubt that the Wage Act "generally prohibit[s] an employer from deducting, or withholding payment of, *any* earned wages," Camara v. Attorney General, 458 Mass. 756, 760 (2011), and that this includes deductions for, as was the case here, uniforms, scanners, and workers' compensation-like insurance. Awuah v. Coverall North America, Inc., 460 Mass. 484, 496-97 (2011); Operating Agreement, ¶ 3.6 (R. 263).[4]  However,

---

[2]    When the district court held that the Plaintiffs were employees under prong two of section 148B, the court saw no reason to rule on the Plaintiffs' motion for summary judgment under prong three. Schwann v. FedEx Ground Package Sys., Inc., 2013 WL 3353776 (D. Mass. Jul. 3, 2013). Should this Court find that prong two is preempted by the FAAAA, remand would be necessary so that the Plaintiffs' employment status can be determined under the traditional "right to control" and "independently established business" tests found in prongs one and three of section 148B.

[3]    The Wage Act "requires an employer to pay 'the wages earned' to an employee within a fixed period of days after the end of a pay period." Awuah v. Coverall North America, Inc., 460 Mass. 484, 492 (2011).  492 (2011). "The word 'earn' is not statutorily defined, but its plain and ordinary meaning is "[t]o acquire by labor, service, or performance,' or '[t]o do something that entitles one to a reward or result, whether it is received or not.'" Id., quoting BLACK'S LAW DICTIONARY 584 (9th ed. 2009).

[4]    As stated earlier, workers' compensation insurance is covered under Chapter 152, which has its own definition of "employee," and therefore section 148B does not impose any obligation upon an employer to provide workers' compensation insurance.  However, "once [an employer under section 148B]

FedEx has not shown any way in which paying for uniforms and scanners has any impact on its prices, routes, or services. DiFiore v. American Airlines, Inc., 646 F.3d 81, 89 (1st Cir. 2011) (preemption does not occur merely because a state law "imposes costs on [motor carriers] and therefore affects [prices] because costs must be made up elsewhere…."), citing Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1189 (9th Cir. 1998). FedEx can still require the Plaintiffs to wear uniforms and use scanners when they deliver packages.  The Wage Act merely provides that FedEx cannot deduct the cost of these items from its drivers' wages.

Still unresolved, however, is the question of whether the Wage Act requires FedEx to reimburse its employees for their out-of-pocket costs incurred on the job.  The district court certified this question to the SJC, and the issue was fully briefed by both parties before the district court suddenly ruled on FedEx's motion for summary judgment before the SJC could resolve the expense question.[5]  Importantly, however, even if

---

elect[s] to obtain such coverage, it [is] not free to transfer that cost to the drivers" under the Wage Act. Martins v. 3PD, Inc., 2014 WL 1271761, *8 (D. Mass. Mar. 27, 2014) (Woodlock, J.) (citing Awuah, 460 Mass. 484).

[5]    FedEx argued before the district court and the SJC that no right to expense reimbursements existed under the Wage Act. See FedEx's Memorandum of Law in Opposition to Pls.' Brief Regarding Categories of Recoverable Damages (SA66-90); Brief of Defendant-Appellee FedEx Ground to the SJC, attached as Exhibit 2 to FedEx's Request for Judicial Notice.

section 148B does implicate a right to expense reimbursements,
it still would <u>not</u> force FedEx to maintain its own fleet of
vehicles; FedEx could still require its drivers to own or lease
their own vehicles, and require its drivers to pay out of their
own pockets to maintain those vehicles. <u>Fraelick v. PerkettPR,
Inc.</u>, 83 Mass.App.Ct. 698, 706-08 (2013) (finding that the Wage
Act is not violated where an employer required employees to pay
for its own business expenses out of pocket, where the employer
later reimburses the employees).  At most, FedEx would simply
have to reimburse its drivers for vehicle-related costs
associated with delivering FedEx's packages, and FedEx can
continue to operate as it always has – by requiring its drivers
to obtain and maintain their own vehicles. Indeed, other states
have explicit expense reimbursement statutes that allow the very
same arrangement. <u>See</u>, <u>e.g.</u>, <u>Rothwell v. Allstate Ins. Co.</u>, 976
P.2d 512, 513 (Mont. 1999) (interpreting Montana's statutory
right for employees to be reimbursed for business expenses,
found in Mont. Code Ann. § 39-2-701(1));[6] <u>Ayala v. Antelope
Valley Newspapers, Inc.</u>, 210 Cal.App.4th 77, (2012)(certifying

---

[6]    In fact, Montana utilizes an "AB" test that is virtually
identical to prongs one and three of section 148B to define
which workers qualify as covered "employees" for purposes of its
employee expense reimbursement statute. <u>See</u> <u>Croskey v. Estate of
Cheyney</u>, 2011 WL 1807111, *1-3 (D. Mont. May 6, 2011) (applying
the Montana Supreme Court's AB test analysis to find that a
FedEx driver was an employee under the "independently
established trade or business" prong because he worked
exclusively for FedEx for 13 years).

class action claims by newspaper delivery drivers to enforce
California's employee expense reimbursement statute,
Cal.Lab.Code § 2802).

Ultimately, the only possible effect that a finding of
"employee" status under prong two of section 148B could have on
FedEx is to require FedEx to pay the Plaintiffs their full
earned wages, and no matter how the SJC might have resolved the
parties' dispute over expense reimbursements, FedEx will still
be permitted to hire drivers who buy or lease their own vehicles
to deliver FedEx's packages along the same routes as before, and
FedEx will not be required to alter in any way the prices,
routes, or services that FedEx offers to its customers.

## II. EMPLOYEE STATUS UNDER SECTION 148B DOES NOT TRIGGER VIRTUALLY ANY OF THE OBLIGATIONS RAISED AS CONCERNS IN THIS CASE AND IN <u>MDA</u>.

First and foremost, section 148B does not define which
workers qualify as covered "employees" for purposes of any
statute outside of chapters 149 and 151. M.G.L. c. 149, § 148B
(defining "employee" status only "[f]or the purpose of [chapter
149] and chapter 151."). Therefore, although FedEx has alluded
to the cost of administering income tax withholdings for each
driver and paying workers' compensation insurance costs, those
obligations are governed by the Payroll Tax Law, Chapter 62B,
and the Workers' Compensation Law, Chapter 152, respectively,
and each of those laws has their own unique definitions of

9

covered "employee" that are distinct from section 148B. <u>Sebago</u>, 471 Mass. at 338-39 and fn. 12-14, <u>citing</u> M.G.L. c. 152, § 1(4) (defining the term "employee" under the Workers' Compensation Law), <u>and</u> 830 C.M.R. 62B.2.1(3)(b) (applying the IRS common law definition of "employee" for payroll tax withholding purposes).[7]

Nor do any of the laws found in chapters 149 and 151 which are actually implicated by a finding of "employee" status have any effect on FedEx's prices, routes, or services.  For example, FedEx's system of compensating its drivers on a piece rate system – which FedEx argues is a key aspect of its business model because it allows FedEx to incentivize better customer service and greater efficiency – is not prohibited by section 148B or the Wage Act itself. Operating Agreement, ¶ 4.1 (R. 108-110).  FedEx is free to pay its drivers "on a piece work basis … or any other basis," 454 C.M.R. § 27.02, as long as the total sum of compensation for any given week exceeds the minimum wage rate.  Here, FedEx has not even suggested – let alone submitted any evidence – that its drivers' compensation even came close to being as low as minimum wage levels, and therefore the minimum wage requirement of M.G.L., c. 151, § 1, also has no effect in

---

[7]    Likewise, the Unemployment Insurance Law utilizes an ABC test with a distinctly different prong two which, in contrast to section 148B, exempts workers who perform their "service … either outside the usual course of the business for which the service is performed <u>or … outside of all the places of business of the enterprise for which the service is performed</u>. M.G.L. c. 151A, §2(a-c) (emphasis added).

this case.  Similarly, the Wage Act does not prohibit FedEx from offering performance bonuses to its drivers in order to incentivize good performance and efficiency. <u>Weems v. Citigroup Inc.</u>, 453 Mass. 147, 153-54 (2009)(discretionary performance bonuses not prohibited by the Wage Act).  FedEx has failed to cite a single authority to establish otherwise.

Moreover, Massachusetts law does not prevent FedEx from maintaining a flexible workforce that responds to the ebbs and flows of the delivery business.  Under the Wage Act, FedEx is not required to pay its drivers for any "on-call" time when they do not have any packages to deliver, as long as the drivers are "not required to be at the work site or another location, and [are] effectively free to use his or her time for his or her purposes." 454 C.M.R. § 27.04(2).  Since FedEx hangs its hat on the "independent" nature of its drivers' delivery work, FedEx cannot possibly argue that its prices, routes, or services would be impacted by ever having to pay wages for on-call time.  For the same reason, the meal break law, M.G.L. c. 149, § 100, also cannot have any effect on FedEx's prices, routes, or services, because FedEx has always taken the position that its drivers are free to determine when they take breaks, (R. 258), ¶ 1.15, and the meal break law does not change this practice at all – workers are free to skip their meal breaks. Official Website of the Attorney General of Massachusetts

11

(http://www.mass.gov/ago/doing-business-in-massachusetts/labor-laws-and-public-construction/wage-and-hour/meal-breaks.html) (employees may choose to skip meal breaks). Likewise, FedEx identifies no impact from the maternity leave law, which allows certain workers, with advance notice, to take up to eight weeks of unpaid parental leave, M.G.L. c. 149, § 105D, and indeed the burden is no greater than the federal Family Medical Leave Act. 29 U.S.C. § 2612(a)(1)(A-B) (providing twelve weeks of unpaid parental leave). Moreover, FedEx cannot complain about the requirement to track its drivers' hours found in M.G.L. c. 149, § 52, ad M.G.L. c. 151, § 15, because FedEx has always tracked this information for its drivers. Brown Decl., ¶ 20 (R. 497-98).

FedEx is also foreclosed from arguing that the Massachusetts Overtime Law has any effect on its prices, routes, or services in this case, for the simple reason that Massachusetts law exempts the Plaintiffs from its protections because they operated vehicles that exceeded 10,001 pounds gross vehicle weight rating. Brooks, 620 F.Supp.2d 193 (D. Mass. 2009) (the Massachusetts overtime law exempts drivers operating vehicles with a gross vehicle weight over 10,001 pounds), citing M.G.L. c. 151A, §1A(8); Tidd, 2008 WL 4286512 at *1-4 (FedEx drivers held to be exempt from the Massachusetts overtime law).[8]

---

[8]   Moreover, overtime laws merely require additional pay for qualified workers, which may lead to increased costs, but any

FedEx has set forth no evidence to suggest that the overtime laws apply in this case, and indeed Plaintiffs have never made any such argument. Therefore, although Plaintiffs would dispute that an overtime law could possibly be preempted by the FAAAA, this Court need not reach that issue here.

FedEx also cites the Sunday work law found in M.G.L. c. 149, § 47, and the similar laws regulating work days found in M.G.L. c. 149, §§ 48-51.  However, the Sunday work law does not actually prohibit work on Sunday, but merely provides that an individual who works on a Sunday must have a day off sometime in the next six days. M.G.L. c. 149, § 47.  Here, the record establishes that FedEx Ground has never made deliveries on Sundays, so that law is not an issue here. (R.64). Meanwhile, the laws found in M.G.L. c. 149, §§ 48-51, concern workers being given one day off in every seven day period, but the laws specifically apply <u>only</u> to employers at a "manufacturing, mechanical or mercantile establishment…," M.G.L. c. 149, § 48, which clearly does not include FedEx's delivery business.

### III. THERE IS NO EVIDENCE THAT PRONG TWO OF SECTION 148B AFFECTS FEDEX'S PRICES, ROUTES, OR SERVICES.

Although FedEx's brief cites numerous statutes found in chapters 149 and 151, FedEx has not submitted a shred of

---

such effect on prices is too remote to be preempted. <u>DiFiore</u>, 646 F.3d at 89 (state laws that indirectly increase costs are not preempted), <u>citing</u> <u>Mendonca</u>, 152 F.3d at 1189.

evidence to show how any of these laws would alter its prices, routes, or services, if applied to its drivers.  Indeed, FedEx admits that it employs thousands of package handlers who "are responsible for unloading packages when they arrive at each hub or terminal," as well as loading packages into the drivers' trucks each morning. (R. 540), ¶ 3; (R. 555), ¶ 9, and the effect of the meal break law, overtime law, and Sunday work law are arguably greater for package handlers than FedEx's drivers (who are overtime exempt and who do not operate on Sundays), yet not even FedEx is arguing that its package handlers are exempt from chapters 149 or 151.

Instead, FedEx relies on a solitary statement in an affidavit by a FedEx "manager of safety process management" that FedEx's business model "operates on the premise that those directly involved in delivery will be more invested in their work and more dedicated to providing excellent customer service if they have a personal and financial stake in doing so." (R. 556), ¶ 12 (cited in FedEx's Br., 21-22).  However, as explained above, nothing in the laws found in chapters 149 or 151 prevent FedEx from using the same incentives that it used for the Plaintiffs, including paying its drivers on a per-package and per-stop basis, and providing bonuses contingent on good performance. (R. 557), ¶ 22; 454 C.M.R. § 27.02 (payments "on a piece work basis … or any other basis" are allowed); Weems, 453

14

Mass. at 153-54 (2009) (discretionary performance bonuses permitted under the Wage Act). FedEx has submitted no evidence that delivery drivers who qualify as "employees" under section 148B provide a different level of service than if those same drivers were labeled "independent contractors." Indeed, FedEx's customers would remain completely oblivious to the drivers' employment classification either way. (R. 556), ¶ 23; See Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1316 (11th Cir. 2015) ("For customers who are regularly visited by the ubiquitous white trucks of FedEx Ground, with their familiar purple and green logos, the usual concern is whether packages are picked up on schedule and delivered on time," not whether the drivers are employees of FedEx).[9] Therefore, FedEx has submitted no evidence that prong two of section 148B has any impermissible effect on its prices, routes, or services when applied to its drivers.

---

[9] Likewise, even if the Wage Act required FedEx to reimburse the Plaintiffs for their vehicle costs, FedEx's drivers would retain the same incentive to keep vehicle costs down. This is because the Wage Act does not prohibit FedEx from hiring drivers who own their own vehicles, and FedEx could simply reimburse those drivers' expenses using a flat mileage-based rate, thereby encouraging drivers to keep their actual costs down. See, e.g., Gattuso v. Harte-Hanks Shoppers, Inc., 169 P.3d 889, 898 (Cal. 2007) (holding that the IRS standard mileage rate is an acceptable method for calculating employee vehicle expenses for purposes of California's expense reimbursement statute).

Respectfully submitted,
CLAYTON SCHWANN, et al.

By their attorneys


/s/ Harold Lichten
Harold L. Lichten, C.A.B. 22114
Shannon Liss-Riordan, C.A.B. 77877
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617)994-5800
hlichten@llrlaw.com
sliss@llrlaw.com


Dated:    November 16, 2015

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2015, I electronically filed the foregoing brief with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties are registered as ECF filers and that they will be served by the CM/ECF system:

Counsel for Defendant FedEx Ground Package System, Inc.:

Caroline H. Cochenour
Molly Grammel
Kate Elizabeth MacLeman
James C. Rehnquist
Goodwin Procter LLP
53 State St.
Exchange Place
Boston, MA 02109-2881

William M. Jay
Goodwin Procter LLP
901 New York Ave NW
Washington, DC 20001-0000

/s/ Harold Lichten
Harold Lichten